GEORGE F. VIETOR and Others, Respondents, v. MOSES HENLEIN and Others, Appellants.

WILLIAM E. ISELIN and Others, Respondents, v. THE SAME.

EMIL OELBERMAN and Others, Respondents, v. THE SAME.

OTTO HEINZE and Others, Respondents, v. THE SAME.

*Attachment — a debt is due at once, if the goods be sold on a credit procured through fraudulent representations — it is fraudulent for the members of an insolvent firm to pay individual creditors out of the firm assets, or to reserve moneys for the support of their families, when making a general assignment.*

Appeal from an order denying a motion to vacate an attachment.

One of the grounds upon which the attachment was issued was, that the defendants had become indebted to the plaintiffs in the sum of $12,000 and upwards, upon the sale and delivery to them of goods and merchandise, and they were also charged with having assigned, disposed of and secreted their property with intent to defraud their creditors. The grounds for the attachment were controverted by the affidavits presented on behalf of the defendants. It was stated that the goods had been sold upon a credit of four months, which, at the time when the attachment was issued, had not expired; and to answer that statement, affidavits were produced on behalf of the plaintiffs to establish the fact that the debt had been fraudulently contracted, and for that reason the defendants had deprived themselves of their right to insist upon the credit.

The court, at General Term, said: "If the plaintiffs were right in the answer made to this objection, then the terms of the credit were not binding upon them, but they were at liberty to bring their action for the recovery of the purchase-price of their goods in the same manner as though no agreement for any period of credit had been made. (*Wigand v. Sichel*, 3 Keyes, 120; *Claflin v. Taussig*, 7 Hun, 223; *Arnold v. Shapiro*, 29 Hun, 478; *Nelson v. Hyde*, 66 Barb., 59.)

"And as one of the grounds upon which the attachment was issued was, that the defendants had become indebted to the plaintiffs for the price or value of the goods, the fact itself could be

established in this manner in answer to the affidavit on the part of the defendants, that the term of credit had not expired when the action was commenced. For by section 683 of the Code of Civil Procedure the application to discharge the attachment, when it may be founded upon proof on the part of the defendants, may be opposed by new proof by affidavit on the part of the plaintiffs tending to sustain any ground for the attachment recited in the warrant. The existence of the indebtedness was one of the grounds so recited, and when that fact was assailed by affidavit on behalf of the defendants, the plaintiffs were entitled to meet and avoid it by showing the fact that the debt itself had become due, notwithstanding the agreement made for the credit." * * *

In support of the position that the defendants had assigned and disposed of their property with intent to defraud their creditors, reliance was placed by the plaintiffs on two facts. These were that they had paid to Max Wolff a fictitious debt of $13,754.91, and that they had together drawn from the firm the sum of $12,061.81, to be appropriated to their own individual uses and benefit, and not to be passed to the assignee under the general assignment. While the books of the defendants contained no authentic account of the alleged indebtedness to Wolff, it was still made to appear that the firm was indebted to him in the amount he had received. There was, therefore, although the payments made to Wolff were suspicious, no necessarily fraudulent disposition of the debtor's property in making that payment. But as to the amount drawn by themselves from the firm assets the case was entirely different, for it was shown that this amount consisted of sums drawn by the different members of the defendants firm. It is stated to have been admitted by Louis Wolff, in the presence of the other defendants, who made no denial of the admission, at a meeting of the creditors, that the different sums, aggregating this amount of $12,061.81, had been drawn by the individual members of the firm to pay individual family debts, and to be devoted to the support and maintenance of their respective families during the time that should elapse between their failure and the date of effecting a settlement with their creditors. And if they effected such a settlement at forty cents on the dollar, the money drawn out would be at the disposal of the creditors in part payment of the compromise, but if they did not, then

the money withdrawn would be devoted to the support of their respective families. The affidavits made by the defendants, in substance, admitted that these sums of money had been drawn by them from the moneys of the firm previous to the execution and delivery of the assignment, and in case they failed to secure the compromise of their debts in this manner, that they designed and intended to appropriate it to the uses and support of their families. They did not, however, concede the amount to be that stated on behalf of the plaintiffs, but averred it to amount in the aggregate to the sum of $7,978.61. This difference was made up to the extent of $3,083.20 by payments which Moses Henlein made to William Reichman, to whom he was individually indebted upon a loan. It was not denied that the sum alleged to have been received by him had not, as a matter of fact, been drawn from the assets of the firm, but to the extent of these two payments that he had become indebted to the person to whom they were made, and made the payments to extinguish that indebtedness. It was still a misappropriation of so much of the property of the firm, whose creditors were entitled to be benefited by it, drawn out by one of its members with the concurrence of the others, intending to and actually appropriating it to the payment of his own individual debts, and unauthorized by the condition in which this firm at that time was financially situated. According to the most favorable state of the case made by the defendants, they individually took from the firm assets the sum of $7,978.61, to be chiefly used and appropriated in the future for the support of themselves and their families, unless by means of their assignment, and the proposal made by them, they could secure an adjustment of their debts with their creditors at the rate of forty cents on the dollar. This was an unlawful appropriation of so much, at least, of the firm's property, and it cannot be legally excused by the circumstances that they may not have positively intended thereby to defraud their creditors. For the fact necessarily is, to this extent, that the creditors were defrauded by making this disposition of this sum of money, which the law did not permit them to make in the financial condition in which their affairs appear to have been. If, by the assignment itself, they had directed the assignee to pay the members of this firm the respective amounts drawn by them, it

would have been clearly fraudulent and void upon its face. For the law will not permit insolvent debtors to reserve from their estate, when it may be assigned in this manner for the benefit of their creditors, anything more than the property exempt by statute from levy and sale under execution.*

That they did not give this direction in the assignment, but individually took the moneys themselves, rendered it no less an unlawful disposition of their property. It was taking from their assets this amount of money, which the creditors were entitled to the benefit of in the adjustment of their debts; and, within the authorities, it was a fraudulent disposition of so much of their assets. It was property taken by them to be withheld from their creditors, unless, in the single contingency, they should be able to secure a compromise at the rate of forty cents on the dollar, and which they did not afterwards succeed in effecting. A point of this description was considered in *White* v. *Fagan* (18 N. Y. Wk. Dig., 358), where it was held that such an abstraction of property previous to and in contemplation of a general assignment for the benefit of creditors was fraudulent, and the same conclusion results from what was held in *Untermeyer* v. *Hutter* (26 Hun, 147), and *Talcott* v. *Hess* (31 id., 282), and *Shultz* v. *Hoagland* (85 N. Y., 464–468, 469). It has been supposed by the defendants' counsel that the case of *Sherill, etc., Co.* v. *Harwood* (30 Hun, 9) afforded some countenance for this conduct of the defendants. But that case differed so materially in its facts as not to be liable to this construction by any of its language. As the case has been presented, the plaintiffs were entitled to an attachment against the property of the defendants, for the reason that they had disposed of a portion of it at least, with the intent to defraud their creditors, and that conclusion is further confirmed by the entire omission of this sum of money from the inventory filed of the debtor's property.   *   *   *

*Blumenstiel & Hirsch*, for the appellants.

*James Dunne*, for the respondents in first three cases.

*Albert L. Cohen*, for the respondents in last case.

Opinion by Daniels, J.; Davis, P. J., and Brady, J., concurred in the result.

Order affirmed, with ten dollars costs and disbursements.

---

* See *Vial* v. *Mathewson*, 34 Hun, 70.— [Rep.